## YAZOO & MISSISSIPPI VALLEY RAILROAD CO. *v.* FLOYD ANDERSON.

RAILROADS. *Employe stealing ride. Collusion.*

The forcible ejection by a baggage master from his car of another employe, who, with his consent, is stealing a ride to a particular station, imposes no liability upon a railroad company, although, at the time, the train was running rapidly through the station to which the baggage master had agreed to carry him.

FROM the circuit court of Claiborne county.

HON. WILLIAM K. McLAURIN. Judge.

Anderson, appellee, was the plaintiff in the court below; the railroad company was defendant there. The facts are sufficiently apparent from the opinion of the court.

*Mayes & Harris* for appellant.

The plaintiff was not a passenger. He was in the baggage car, where he had no right to be, without paying his fare, and without having transportation furnished him, one or the other of which he knew the rules of the company required.

The arrangement for carrying the plaintiff in the baggage

car was made between the section foreman and the baggage master, without the knowledge or consent of the conductor, and neither the baggage master nor the section foreman had the authority to authorize the transportation of the plaintiff in the baggage car.

The baggage master was violating the rules of the company, and was concealing the plaintiff in the baggage car, carrying him gratuitously, under some understanding that he had with the section foreman and the plaintiff.

The plaintiff states that the baggage master told him that he would not put him off at a night station, because he would be seen, and he, the baggage master, lose his job; that he would carry him as far as he, the baggage master, had promised to carry him, and no farther.

In the light of this testimony, the plaintiff sustained no relation to the railroad company which should entitle him to recover for the wrongful act of the baggage master. The baggage master, in transporting the plaintiff and ejecting him from the train, was not only not acting in the scope of his employment, or in the furtherance of the company's business, but for his own ends, in collusion with the plaintiff and the section foreman, and in violation of the company's rules and against the company's interests in the premises.

There is some claim made in the brief of counsel for the appellee, that, because the plaintiff would have been entitled to a free transportation, he was, therefore, not wrongfully on the train. There is absolutely nothing in this contention, as the plaintiff's own testimony shows, because he makes it plain that he knew that he had to have a pass, and that he did not have it, and that the section foreman had no authority to give him a pass, and that the arrangement was made secretly between the section foreman and the baggage master. The conductor was not applied to. But the rule of the company, introduced by plaintiff himself, makes it plain that even the con-

ductor would have no right to transport the plaintiff, or any one else, without a pass, a ticket, or the payment of fare.

The plaintiff was in the car that was not intended for the carriage of passengers, and if he had a right to be on the train as a passenger, he had a right to be in a passenger coach, and there would be no necessity for the baggage master to conceal his presence on the train from other agents of the railroad company.

A railroad company is liable for the wrongful acts of its agents done within the scope of their employment, and about their master's business, although the act itself was not authorized, and done in violation of instructions and rules.    It is not sufficient, however, for the purposes of this argument, to show that the baggage master was authorized by the rules of the company to eject trespassers from trains.    The true test is, admitting that he had the authority to eject trespassers, admitting that it was his duty to eject them, was what he did in this case done in the master's business?    If not, manifestly, under the well-setled rule in this state, the company is not liable.

If the contention of the appellee is to be accepted as determining this case, the decisions of the court in the cases of *Alabama, etc., Ry. Co.* v. *McAfee,* 71 Miss., 70; *Alabama, etc.; Ry. Co.* v. *Harris,* 71 Miss., 74; *Illinois, etc., R. R. Co.* v. *Latham,* 72 Miss., 32; *Williams* v. *Mobile, etc., R. R. Co.,* 19 So. Rep., 90; *Louisville, etc., Ry. Co.* v. *Douglass,* 69 Miss., 723, were all erroneous.    In each and every one of those cases it was the duty of the employes of the railroad company charged with the tortious acts to eject trespassers from trains, yet the court, in each one of these cases, announced that not to be the determining question, but the question was whether in doing what they did they were acting in the company's interest, and in furtherance of the company's business, or in furtherance of purposes of their own.

In the case of *Williams* v. *Mobile, etc., R. R. Co.,* 19 So.

Rep., 90, it was the conductor himself who was charged with having inflicted a wrongful injury upon the plaintiff.

*McLaurin & McKnight,* for appellee.

In the case of the *Louisville, etc., Ry. Co.* v. *Douglass,* 69 Miss., 729, it is said: "If he [the baggage master] went forward about the business of his employer, and to perform any duty with respect to the boy [the plaintiff], and, while at that was guilty of wrongful conduct, the company is liable for it."

The railroad was held liable in the case of *Southern Ry. Co.* v. *Hunter,* 74 Miss., 444, where the flagman testified that his duty to trespassers on the train was to take them to the conductor, and if the conductor told him to put them off, to pull down the engineer, and stop the train, and put them off. And the case of *Richberger* v. *Express Co.,* 73 Miss., 161, upholds the same doctrine.

Rule No. 654 of the defendant, for the government of train baggage men, forbids baggage men to allow any person to enter the baggage car, except officers, etc. This prohibition carries with it the implied authority to eject persons from the car when not of the excepted classes. The duty to keep persons out implied the authority to eject them if they came into the car. *Hoffman* v. *New York, etc., R. R. Co.,* 4 Am. & Eng. R. R. Cases, 537, s.c. 87 N. Y., 25, s.c. 41 Am. Rep., 337. Furthermore, Joy, the baggage man, testified on cross-examination, that it was his duty, and that the rules of the company required the baggage man to keep people out of the baggage car, and for that purpose there was a protection chain on that car that night, and that he was the baggage man. He stated that he was the baggage man, both in his direct and cross-examination, and he testified, on cross-examination, that if a man was trespassing in the baggage car, that it would be his duty to report it to the conductor, and that he, the baggage man, would have had the train stopped, and put him off. He testified further that he

would treat a trespasser "like a robber." This shows conclusively that Joy was the baggage man on the train of defendant which injured plaintiff, and that he had a duty to perform towards trespassers in the baggage car, or any one in the baggage car other than officials of the company, who were permitted to be in that car. The evidence of the plaintiff and of witnesses, Paine and Ward, shows conclusively that the baggage master on that train, at the point of a pistol, forced plaintiff to jump off the train while under full speed, as it passed through the town of Knoxville.

The attempt here is to bring this case within the rule laid down in case of *Illinois, etc., R. R. Co.* v. *Latham,* 72 Miss., 32, where the agent of the company was engaged in some private scheme of his own; and, even considered in this light, the case was not for appellant, because there is no evidence of any private scheme which the baggage man was undertaking to carry out.

*Martin & Anderson,* on same side.

As shown by the evidence, the duty of the baggage master, if a trespasser were found in his car, was to carry him to the conductor, and have him ejected. The testimony of plaintiff shows that this was not done. On this point the case of *Southern Ry. Co.* v. *Hunter,* 74 Miss., 444, bears directly, exactly the same principle being involved. It is shown by the rules of the defendant that the duty of the baggage master was identical with that of the flagman in the above cited case. The case at bar is therefore distinguishable from the case of *Illinois, etc., R. R. Co.* v. *Latham,* 72 Miss., 32, because in the latter case the brakeman did have authority, and it was in the line of his duty, to eject a trespasser without first calling on the conductor. Clearly the baggage man violated his duty, both to his master and to the plaintiff, and the company is liable. *Richberger* v. *Am. Express Co.,* 73 Miss., 161; *Higgins* v. *Southern Ry. Co.,* 98 Ga., 751, where it is held that a trespasser who boards a

train under a fraudulent agreement with an inferior servant, has a right to recover for unnecessary force used in ejecting him.

In the next place appellee was a passenger, for the evidence shows that he boarded the train under an agreement between the baggage man and the foreman of the bridge gang, Ratliff; and, furthermore, because he was seen, and suffered to remain, and treated as a passenger by Conductor Gore. *Hart* v. *Southern Ry. Co.*, 40 Miss., 391; *Woolsey* v. *Chicago, B. & Q. R. R. Co.*, 39 Neb., 795; *McNulty* v. *Pa. R. R. Co.*, 182 Penn., 479.

Woods, C. J., delivered the opinion of the court.

Accepting as true the evidence of the appellee himself, the peremptory instruction asked for the appellant should have been given.

By the fraudulent collusion of the appellee, the bridge foreman and the baggage master, the appellee was admitted to the baggage car to be carried some distance, in violation of the rules of the company, against its interests, and in fraud of its rights. He knew he must pay fare or have a pass, and, though he endeavored to secure the pass, he failed to get it, and he did not pay his fare, and never intended so doing. The baggage master and the appellee were aware of the propriety of keeping the appellee out of sight while in the baggage car, and when the train reached Knoxville, the point to which the baggage master collusively agreed to carry appellee, the train not stopping, the baggage master compelled the appellee to jump from the rapidly moving car, whereby he lost a leg. The baggage master may be liable for his injury, but not the railroad company.

The case is controlled by the opinions of the court in *Illinois, etc., R. R. Co.* v. *Latham*, 72 Miss., 32, and *Williams* v. *Mobile, etc.. R. R. Co.*, 19 So. Rep., 90.

*Reversed and remanded.*